IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: MARY HELEN MURRAY            :
_____

ROGER SCHLOSSBERG, et al.          :

    Appellants                      :

            v.                 :    Civil Action No. DKC 24-2780

REBECCA HERR, Trustee,             :
et al.
                       :

    Appellees

**MEMORANDUM OPINION**

Roger Schlossberg, Frank J. Mastro, and the Schlossberg | Mastro law firm ("Appellants"), filed this appeal to challenge the decision of the Bankruptcy Court overruling Mr. Schlossberg's objection and confirming the amended plan proposed by Debtor Mary Helen Murray ("Debtor") under Chapter 13 which would pay Appellants' administrative claim for fees incurred in the earlier Chapter 7 proceedings in full over a period of 38 months. The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the order of the Bankruptcy Court confirming Debtor's amended Chapter 13 plan will be affirmed.

## I. Background

On December 19, 2023, Debtor filed a Petition under Chapter 7 of the bankruptcy code. (ECF No. 11, at 7). Roger Schlossberg

("Mr. Schlossberg") was appointed as the Chapter 7 trustee of Debtor's bankruptcy estate (the "Estate"). (ECF No. 11, at 7). One of Debtor's assets is a property interest in real property, 5011 Euclid Drive, Kensington, Maryland 20895 (the "Property"). (ECF No. 11, at 7). In her will (the "Will"), Debtor's mother gave Debtor a life estate in the Property. Appellants contend that the Will "provides that in the event that the Debtor no longer wishes, or [no longer] is able, to reside at the Property, the Property is to be sold with the proceeds of the sale to be divided equally among the Debtor and her four siblings.[1]" (ECF No. 11, at 8). Therefore, Appellants contend that "Debtor owns a 100% vested life estate interest in the Property . . . along with an undivided 20% share of the remainder interest in the Property." (ECF No. 11, at 8). Debtor listed the fair market value of the Property as $671,800, and she exempted $27,900 of her equity in the property. (ECF No. 11, at 8). The unsecured claims filed by creditors total to $64,059.98. (ECF No. 11, at 8-9).

On January 22, 2024, Debtor filed a motion to convert her Chapter 7 case to a case under Chapter 13. (ECF No. 11-1, at 70). Mr. Schlossberg opposed the motion. (ECF No. 11, at 9). On March 11, 2023, the Bankruptcy Court held an evidentiary hearing and ultimately granted Debtor's motion. (ECF No. 11, at 9).

On March 27, 2024, Debtor filed her Chapter 13 plan. (ECF No. 11, at 9). On April 18, 2024, Mr. Schlossberg filed a "[f]irst

and [f]inal [a]pplication for [a]llowance and [p]ayment of [c]ompensation for [c]ounsel to [f]ormer [c]hapter 7 [t]rustee," (the "Fee Application") requesting $12,174.00 for administrative expenses, and Debtor objected. (ECF Nos. 11, at 10; 12, at 10). On June 17, 2024, and July 30, 2024, Appellants and Debtor filed joint motions to continue the Fee Application hearings. (ECF No. 12, at 10). On June 19, 2024, Debtor filed her amended Chapter 13 plan (the "Plan"), proposing to pay a total of $30,000 over sixty months. (ECF No. 11, at 10). According to the Plan, Appellants' administrative expenses claim would be paid in full. (ECF No. 11, at 10, ECF No. 11-2, at 6). On July 7, 2024, Appellants filed an objection to the confirmation of the Plan. (ECF No. 11-2, at 13). On August 21, 2024, the Bankruptcy Court held a hearing, and on September 12, 2024,[1] the Bankruptcy Court confirmed the Plan during an oral ruling over Zoom. (ECF No. 11-2, at 262).

On September 26, 2024, Appellants filed a notice of appeal. (ECF No. 11-67). On October 9, 2024, the Bankruptcy Court held a hearing on the Fee Application, and on January 10, 2025, the Bankruptcy Court approved the Fee Application. (ECF No. 12, at 12). On January 13, 2025, Appellants filed their brief in this

---

[1] Both Appellants and Debtor state that the Bankruptcy Court held a virtual hearing and confirmed the Plan on September 9, 2024, (ECF Nos. 11, at 11; 12, at 12). The Bankruptcy Court record, however, states that the ruling took place on September 12, 2024. (ECF No. 11-2, at 262).

court.   (ECF No. 11).   On February 26, 2025, Debtor filed her brief.   (ECF No. 12).   On March 24, 2025, Appellants filed their reply brief.   (ECF No. 15).

## II. Standard of Review

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a), which states in relevant part: "The district courts of the United States shall have jurisdiction to hear appeals[1] (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

> In an appeal from Bankruptcy Court, this Court reviews factual findings for clear error and conclusions of law de novo. *Gold v. First Tenn. Bank Nat'l Ass'n (In re Taneja)*, 743 F.3d 423, 429 (4th Cir. 2014). A finding is clearly erroneous only if, after reviewing the record, the reviewing court is left with "a firm and definite conviction that a mistake has been committed." *Klein v. PepsiCo, Inc.*, 845 F.2d 76, 79 (4th Cir. 1988).

*Ekweani v. Thomas*, 574 B.R. 561, 567 (D.Md. 2017).

## III. Analysis

Appellants challenge three aspects of the Bankruptcy Court's decision: (1) finding Appellants lacked standing to challenge the Plan; (2) finding parts of Mr. Schlossberg's testimony inadmissible opinion testimony; and (3) concluding that the Plan satisfied the best interest of the creditors test. (ECF No. 11). Debtor contends that the Bankruptcy Court ruled correctly on these

three points, and further, that Appellants' appeal is equitably moot. (ECF No. 12).

### A. Equitable Mootness

"Equitable mootness 'is a pragmatic doctrine "grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable."'" *Clark v. Council of Unit Owners of 100 Harborview Drive Condo.*, No. 18-cv-03542-SAG, 2019 WL 4673434 (D.Md. Sept. 25, 2019), *aff'd*, 857 F. App'x 729 (4th Cir. 2021) (quoting *In re Bate Land & Timber LLC*, 877 F.3d 188, 195 (4th Cir. 2017)). The United States Court of Appeals for the Fourth Circuit has stated that:

> Factors in making this determination include (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). Debtor points out that Appellants have not sought a stay, the Chapter 13 Trustee has begun making payments to Appellants, the relief requested would undermine the Plan, and the interests of other unsecured creditors would be impacted negatively. (ECF No. 12, at 16-17).

Although several factors could be said to weigh in favor of finding equitable mootness, the Trustee has only "begun making distributions" and those are to Appellants. Therefore, the Plan has not "been substantially consummated," and the appeal will not be dismissed as equitably moot.

### B. Standing

The Bankruptcy Court found that Appellants are not a "party in interest" with standing to object to the Plan. (ECF No. 11-2, at 269). The Bankruptcy Court recognized the recent Supreme Court decision in *Truck Insurance Exchange v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024), where the Court found that, for Chapter 11, a party in interest is broadly construed. The Bankruptcy Court remarked that it is "not intended to include literally every conceivable entity that may be involved in or affected by the Chapter 11 proceedings." (ECF No. 11-2, at 269-270 (quoting *Truck Ins. Exch.*, 602 U.S. at 284)). "Courts must determine on a case-by-case basis whether a prospective party has a sufficient stake in reorganization proceedings to be a 'party in interest.'" (ECF No. 11-2, at 270 (quoting *Truck Ins. Exch.*, 602 U.S. at 277)). The Bankruptcy Court stated:

> When conducting this case-by-case analysis, the Supreme Court repeatedly considered whether a prospective party may be directly or adversely affected by the reorganization plan. Considering the history of this case, the terms of the amended plan and Mr. Schlossberg's status as an administrative creditor, it is clear that Mr. Schlossberg's interest as an administrative creditor

will not be directly and adversely affected under the
amended plan. In fact, Mr. Schlossberg does not even
attempt to make such an argument. Instead, he presents
his argument as if he were acting on behalf of unsecured
creditors, which he no longer has the authority to do.

(ECF No. 11-2, at 270). Therefore, the Bankruptcy Court concluded
"that Mr. Schlossberg lacks standing to make the objection he
filed." (ECF No. 11-2, at 270).

Appellants argue that, under *Truck Insurance Exchange*, a
court should not only determine how the party would be treated
under the proposed plan, but also "whether the reorganization
proceedings might directly affect a prospective party." (ECF No.
11, at 18 (quoting *Truck Ins. Exch.*, 602 U.S. at 271)). Appellants
argue that because they are affected by the Chapter 13
reorganization proceedings, such as being "required to petition
the bankruptcy court for allowance of their administrative claim,"
they are parties in interest with standing to object to the Plan.
(ECF No. 11, at 19).

Debtor argues that the Bankruptcy Court correctly determined
that Appellants are not parties in interest with standing to object
to the confirmation of the Plan because, "[u]nlike the insurer in
*Truck Insurance Exchange*, the Appellants' economic interests are
unchanged by confirmation of the Plan." (ECF No. 12, at 19-20).
Moreover, Debtor argues that Appellants do not have standing to
appeal the Bankruptcy Court's order. (ECF No. 12, at 18). Debtor
argues that Appellants are not "persons aggrieved" by the order

because they "are not adversely affected pecuniarily by confirmation of the Plan because the Plan pays the Appellants' allowed administrative claim in full and before all other creditors." (ECF No. 12, at 18).

In their reply, Appellants reiterate their position that the Bankruptcy Court erred in finding they do not have standing to object to the confirmation of the Plan, and Appellants also argue that they have standing on appeal because they are "persons aggrieved" by the Plan. (ECF No. 15, at 8). Although Appellants acknowledge that their administrative claim will be paid in full under the Plan, they contend that it will take thirty-eight months for the claim to be paid in full. (ECF No. 15, at 8). Appellants argue that if they "prevail on appeal and the case is returned to Chapter 7 for liquidation of the Debtor's life estate and remainder interests in the [Property] . . . Appellants' administrative claim will be satisfied much quicker." (ECF No. 15, at 8). Therefore, Appellants contend that they are "'aggrieved' by the confirmation of the Debtor's Amended Plan because the longer time horizon required for payment under the Amended Plan has decreased the present value of their claim." (ECF No. 15, at 8) (italics removed).

The Bankruptcy Court correctly concluded that Appellants do not have standing to object to confirmation of the Plan. Appellants were not parties in interest because they were not

8

"directly and adversely affected" by the Plan. Appellants are administrative creditors of the Estate, and the Plan provided for their administrative claim to be paid in full. As the Bankruptcy Court noted, "it is clear that Mr. Schlossberg's interest as an administrative creditor will not be directly and adversely affected under the amended plan. . . . [Mr. Schlossberg] presents his argument as if he were acting on behalf of unsecured creditors, which he no longer has the authority to do." (ECF No. 11-2, at 270).

Additionally, Appellants do not have standing to appeal the Bankruptcy Court's order.

> The test for standing to appeal a bankruptcy court's order is whether the party is a "person aggrieved" by the order, *In re Urb. Broad. Corp.*, 401 F.3d 236, 243 (4th Cir. 2005), meaning that the party is "directly and adversely affected pecuniarily," *id.* at 244 (quoting *In re Clark*, 927 F.2d 793, 795 (4th Cir. 1991)); see *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 371 (3d Cir. 2022) (explaining that "parties meet that standard only when a contested order 'diminishes their property, increases their burdens, or impairs their rights'" (citation omitted)).

*In re Bestwall LLC*, 71 F.4th 168, 177-78 (4th Cir. 2023), *cert. denied sub nom. Off. Comm. of Asbestos Claimants v. Bestwall LLC*, 144 S.Ct. 2519 (2024), and *cert. denied sub nom. Esserman v. Bestwall LLC*, 144 S.Ct. 2520 (2024). Appellants have not shown they are "directly and adversely affected pecuniarily" by the Bankruptcy Court's order. Although Appellants argue they are "aggrieved" because the "longer time horizon required for payment

9

under the [Plan] has decreased the present value of their claim,"
as discussed below, the Bankruptcy Court detailed the factual
calculations and found that Appellants would not receive the money
any sooner if Mr. Schlossberg liquidated the Property. (ECF No.
11-2, at 276-277).

Nevertheless, even if Appellants had standing to object to
the confirmation of the Plan or to appeal the Bankruptcy Court's
order, as will be discussed more fully below, the Bankruptcy Court
correctly concluded that the Plan met the best interest of the
creditors test.

### C. Opinion Testimony

The Bankruptcy Court found that portions of Mr. Schlossberg's
testimony regarding "the value of the property, the value of the
interest in the property held by the estate, and what would happen
in hypothetical Chapter 7" was opinion-based testimony, and not
factual testimony. (ECF No. 11-2, at 272). Because Mr.
Schlossberg was not designated as an expert on these subjects, the
Bankruptcy Court found that Mr. Schlossberg's opinion testimony
was inadmissible under Federal Rule of Evidence 701. (ECF No. 11-
2, at 272). Therefore, the Bankruptcy Court excluded Mr.
Schlossberg's testimony about the value of the Property interests
and found that Mr. Schlossberg "failed to submit admissible
probative evidence outweighing the evidence and proffer provided
by the Chapter 13 Trustee and debtor." (ECF No. 11-2, at 273).

10

Appellants argue that the Bankruptcy Court erred in finding that Mr. Schlossberg's testimony was inadmissible because the parties had stipulated to the value of the Property. (ECF No. 11, at 23). Additionally, Appellants argue that the testimony was "factual testimony as to what he would have done to liquidate the Estate if he were still the Chapter 7 trustee which, as the bankruptcy court recognized, is relevant to the second calculation that the court is required to make in a 'best interest of creditors' analysis." (ECF No. 11, at 27).

Debtor argues that the Bankruptcy Court did not err in finding that the testimony was inadmissible because Mr. Schlossberg was not an expert witness under Federal Rule of Evidence 701. (ECF No. 12, at 26). Further, Debtor argues that even if the testimony was factual, the "Bankruptcy Court considered the former Chapter 7 Trustee's argument but ultimately found it unpersuasive because the terms of the Will and the Debtor's interest under it, were unclear and uncertain and a hypothetical Chapter 7 trustee would face 'extensive litigation' against [Debtor] and her siblings." (ECF No. 12, at 27-28).

This court need not determine on appeal whether the testimony was factual or opinion testimony, and whether the testimony was admissible or not. The Bankruptcy Court determined that "even if the Court had ruled that Mr. Schlossberg had standing in his objection, and further had ruled that his testimony was admissible,

11

the Court would still find and conclude that the amended plan satisfies the best interest of creditors test." (ECF No. 11-2, at 273). As discussed below, this court agrees.

### D. Best Interest of the Creditors

The Bankruptcy Court found that the Plan satisfied the "best interest of the creditors" test under 11 U.S.C. § 1325(a)(4). (ECF No. 11-2, at 273). The Bankruptcy Court stated that:

> The so-called best interest of creditors test or liquidation analysis obliges the Court to imagine a hypothetical Chapter 7 liquidation and consider the hypothetical distribution to unsecured creditors. In so doing, the Court must value the non-exempt assets in the estate, "deduct the cost of liquidation, including trustee's fees and other administrative expenses." *In Re Delbrugge*, 347 B.R. 536, Bankruptcy, Northern District of West Virginia (2006).

(ECF No. 11-2, at 273-74).

The Bankruptcy Court found that the only relevant asset of the Estate is the Debtor's interest in the Property. (ECF No. 11-2, at 274). The Bankruptcy Court noted that while the Debtor holds a life estate in the Property, the life estate is only marketable "at a steep discount." (ECF No. 11-2, at 274). The Bankruptcy Court calculated as follows:

> [T]he Court finds that the market value of the life estate for purposes of the liquidation analysis is $70,000. Debtor has claimed an exemption of $28,000, costs of sale are likely to equal roughly 10 percent, or $7,000. Chapter 7 trustee compensation is estimated at 10 percent, or another $7,000. This leaves roughly $28,000 before accounting for administrative expenses, which are likely to be substantial.

Accordingly, if the life estate were the only property interest that could be liquidated in Chapter 7, the amended plan satisfies 1325(a)(4).

(ECF No. 11-2, at 274).

The Bankruptcy Court noted that Mr. Schlossberg argued that in Chapter 7, the trustee could sell both the life estate and the one-fifth remainder interest Debtor owns pursuant to the Will. (ECF No. 11-2, at 275). The Bankruptcy Court stated that this interpretation of the Will is not straightforward. (ECF No. 11-2, at 275). Nevertheless, even if Debtor was entitled to a one-fifth remainder interest in the Property, "the trustee would face an uphill battle, coupled with extensive litigation against debtor and her siblings to untangle this quagmire." (ECF No. 11-2, at 275). Further, "the realization of debtor's alleged contingent remainder interest requires the termination of her life estate." (ECF No. 11-2, at 275). The Bankruptcy Court found that even terminating the life estate and liquidating the Property would not provide the Estate with more funds. The Bankruptcy Court calculated as follows:

The parties stipulated, for purposes of this matter, that the fair market value of the property sold free and clear of all interest is $671,800. Presumptive costs for sale would total approximately $144,360. Ten percent for realtor fees and closing costs. $67,180; 10 percent for repairs, $67,180; $10,000 to remove the lien. This would leave $527,440, of which the bankruptcy estate would receive a one-fifth share, or $105,488. Debtor has claimed an exemption of $28,000. That leaves $77,488 for the hypothetical bankruptcy estate.

13

So if the matter were cut and dry, and there would be no administrative expenses in a Chapter 7, it is likely that the amended plan would not satisfy the best interest of creditors test.

However, as already mentioned, even if the Chapter 7 trustee is ultimately able to liquidate the property, the process would be anything but cut and dry.

In light of the fact that Mr. Schlossberg has accumulated over $12,000 of administrative expenses in less than three months, it is almost certain that a hypothetical Chapter 7 trustee would incur significantly more than additional $50,000 in litigation and administrative expenses to liquidate the property.

Accordingly, the distribution to creditors in a hypothetical Chapter 7 case would be less than under the amended plan, and that is before discounting the value of the alleged remainder interest based on the uncertainty that a hypothetical Chapter 7 trustee would even be able to realize it, which, based on the evidence before the Court is, at best, a 50-50 shot.

Based on the foregoing, the Court concludes that the amended Chapter 13 plan satisfies Section [1]325(a)(4) and will allow for a greater distribution to creditors than in a hypothetical Chapter 7.

(ECF No. 11-2, at 276-77).

Appellants argue that the Plan does not satisfy the best interest of the creditors test and the Bankruptcy Court erred in discounting that a Chapter 7 trustee has the power to sell both the life estate and the remainder interest in the Property. (ECF No. 11, at 28). Debtor argues that the Bankruptcy Court "made the well-reasoned estimate of the liquidation value" of the life estate, and also correctly found that Appellants' plan to sell both the life estate and the remainder was not straightforward from the Will. (ECF No. 12, at 32-33).

14

Subject to certain exceptions not relevant here, the statute provides that:

> the court shall confirm a plan if . . . (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

§ 1325(a)(4). In its detailed factual calculations, the Bankruptcy Court found that Appellants' proposed pursuit of the sale of both the life estate and the remainder was far from straightforward, or even achievable, and thus would not net more funds for distribution.  Based on the Will, the Bankruptcy Court found that:

> [T]he realization of [D]ebtor's alleged contingent remainder interest requires the termination of her life estate.
>     As such, there is no scenario whereby a hypothetical Chapter 7 trustee could recover the value of both the life estate and the alleged contingent remainder interest for [the] benefit of the estate. Even in the most favorable of outcomes, a hypothetical Chapter 7 trustee would have to choose between the value of the life estate and the value of the remainder interest.

(ECF No. 11-2, at 275-76).  The record shows no error, much less clear error, in Bankruptcy Court's reading of the Will or its factual calculations and determination; therefore, Appellants have not shown that the Bankruptcy Court erred in finding that the Plan satisfies the best interest of the creditors test.

## IV.  Conclusion

For the foregoing reasons, the order of the Bankruptcy Court confirming Debtor's amended Chapter 13 plan will be affirmed.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
